### In re Morris and Lana BOUGH, Debtors.

**Bankruptcy No. 84–00204–S–2–11.**

United States Bankruptcy Court, W.D. Missouri, S.D.

April 17, 1986.

---

## MEMORANDUM OPINION
## AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

This matter comes before the Court on the parties' several motions for an Order to Disburse, but which in reality are applications to approve fees of the various counsel out of funds in the Registry of the Clerk of Circuit Court of Vernon County, Missouri. The fund arose as a result of a jury tried case in that court wherein debtors were the plaintiffs in an action to recover damages from the manufacturer of a milking system (Babson Brothers Co.) hereinafter Babson and the selling and installing dealer (Bolivar Surge Sales and Service, Inc.) hereinafter Bolivar.

The problem arose in 1982 when debtors purchased the Babson equipment through Bolivar who delivered it. Almost immediately problems which apparently could not be eliminated arose and debtors' milk production dropped sharply. Debtors consulted a law firm in Alabama, Hardin & Hollis. That firm apparently came to the conclusion that the only appropriate venue and jurisdiction was in Vernon County, Missouri, and they referred the matter to Mr. Gary Robb who at that time was an associate in the law firm of Shughart, Thomson & Kilroy, hereinafter Shughart-Thomson, a large law firm in Kansas City. On January 14, 1983, a three page letter setting out the details of employment was written to the debtors and on January 19, 1983, debtors approved it. On February 1, 1983, Hardin & Hollis approved it.

The employment envisioned that Shughart-Thomson would advance all expenses, although they were the ultimate responsibility of debtors; the expenses would be taken off the top of any recovery; Shughart-Thomson would receive 40% contingent fee from the balance; Hardin & Hollis would receive 10% contingent fee from the balance and debtors would get 50% of the balance. Under this arrangement, suit was filed, the issues joined, discovery initiated and experts hired.

Then on January 8, 1984, debtors filed the present Chapter 11 proceeding. They sought permission to hire Mr. Gary Love as their attorney to handle the bankruptcy and the Honorable Joel Pelofsky authorized said employment on July 10, 1984. Debtors had also sought approval of the employment of Shughart-Thomson to handle the damage suit against Babson & Bolivar and that employment was approved on March 7, 1984. In the summer of 1984, Gary Robb and his wife, Anita Robb, both being associates with Shughart-Thomson formed the law firm of Robb & Robb. In December of 1984, a new employment agreement with Robb & Robb, Shughart-Thomson and Hardin & Hollis was executed. Twenty-two percent of any recovery was to go to Robb & Robb, 23% to Shughart-Thomson P.C., and 5% to Hardin & Hollis. Robb & Robb were to "pay" all litigation expenses subsequent to the date of the agreement; Shughart-Thomson all litigation expenses prior thereto. Contained in the new agreement was the following sentence, hereinafter referred to as Clause A:

"Although we will never accept a settlement of your claim without your permission and consent, we expressly reserve the right *NOT* to settle your claim *AFTER* the jury has been sworn at the start of the trial and until the conclusion of

trial as normally designated by a rendering by the jury of a verdict".

The new agreement also contained the following provision, hereinafter called Clause B:

"Attorneys may, in their absolute discretion, withdraw at any time from the case if, after investigation, the claim does not appear reasonably recoverable to them".

Finally, the new agreement contained the provisions hereinafter called Clause C:

"This Contract for Employment of Attorneys supercedes any and all other such contracts, and as of the date this contract is executed, any and all other contracts shall be expressly null and void".

This new agreement was never presented to the Bankruptcy Court and never approved by the Court. However, all counsel, including debtors' bankruptcy counsel, Gary Love, were fully aware of the arrangement as evidenced by bankruptcy counsel's entries, relating to conferences with the litigation counsel in his interim fee applications filed with Judge Pelofsky.

In April of 1985, a jury was impaneled in Vernon County and trial proceeded for six weeks, resulting in a pyrrhic victory for the debtors. The jury found for the debtors; assessed the damages at $225,000.00; and under comparative fault assigned 50% to the debtors; 25% to the defendant Babson Brothers Co. and 25% to the defendant Bolivar Surge Sales and Service, Inc. The Honorable Ronald Belt denied all post trial motions and on August 9, 1986, memorialized the verdict in his Judgment of even date.

The debtors were displeased; the attorneys disappointed, and shortly thereafter the common goal of all for a substantially larger verdict having been dashed on the reef of the jury's decision, discord, dislike and distrust between the parties came into being.

The debtors wanted to appeal. Robb & Robb counseled against it. Shughart-Thomson apparently were not counseled; Hardin & Hollis were never heard from again and the position of bankruptcy counsel was not revealed by any documents or testimony. Finally, Robb & Robb flatly declined to proceed further, billed debtors for all expenses to date and generally washed their hands of the matter in their letter of August 15, 1985, some four days before a Notice of Appeal was due on August 19, 1985. That letter also made demand for payment of $49,249.97 in litigation expenses.

Debtors employed Dennis J.C. Owens to handle the post trial proceedings, appeal and defense of the cross-appeal by Babson who had also sought relief from the judgment. The contract of employment of Mr. Owens provided that he would "pursue an appeal of the Circuit Court judgment on a basis of reimbursement of allowed expenses, plus 5% of any settlement or payment in satisfaction of judgment if received before filing of the "Legal File"; 10% if received before publication of an appellate court opinion; 15% if received after publication of an appellate opinion". Mr. Owens then undertook to obtain a free transcript for the appeal from the Circuit Court on the basis that debtors were indigent.

Judge Belt denied the application on the basis that Bolivar had paid $56,250.00 and costs into the Registry of the Court and that the debtors were, therefore, not indigent. Thereupon, the Missouri Court of Appeals, Western District, by the Honorable Donald B. Clark, ordered debtors to pay one-half of the transcript fee (estimated at $14,000.00) within twenty days of his Order or their appeal would be dismissed. None of the participants was able or willing to pay the $7,000.00 and debtors cross appeal was dismissed. The cross appeal of Babson was also dismissed and $56,250.00 paid into the Registry of the Circuit Court of Vernon County, Missouri, by Babson. The best figures this Court was able to obtain from testimony indicate the following sums on deposit or soon to be deposited:

| | |
|---|---|
| Principal by Bolivar | $56,250.00 |
| Principal by Babson | 56,250.00 |
| Costs by Bolivar | 2,423.70 |
| Costs by Babson | 2,423.70 |
| Total | $117,347.40 |

In addition interest at varying rates from varying dates on the judgment amount have accumulated in the hands of the Clerk.

Against that fund the following disbursements of expenses and fees have been requested:

| | |
|---|---|
| Shughart-Thomson-Expenses | $61,529.26 |
| Shughart-Thomson-Fees (23%) | 2,692.08 |
| Robb & Robb-Expenses | 48,831.39 |
| Robb & Robb-Fees (22%) | 2,575.03 |
| Dennis J.C. Owens-Expenses | 498.91 |
| Dennis J.C. Owens-Fees | 11,250.00 |
| Total | $127,376.57 |

It requires neither mathematical genius nor judicial expertise to determine it is not possible to award the requested expenses and fees out of the available funds. The issues were tried for some six plus hours and the general disappointment and discord of all concerned clearly showed through. To detail further the six hours of testimony would add only heat and not light to this opinion. To state it as succinctly and tersely as possible, the Court finds the following:

1. The law firm of Shughart, Thomson & Kilroy, in good faith, whether wisely or unwisely, committed the sum of $61,529.26 for expenses in the case.

2. The law firm of Robb & Robb, in good faith, whether wisely or unwisely, committed the sum of $48,831.39 for expenses in the case.

3. Dennis J.C. Owens, in good faith committed the sum of $303.91 in expenses (the Court disallowing $195.00 for travel at 30¢ per mile) on the appeal.

4. Gary Love and the debtors were aware at all times that substantial sums were being expended in the case.

There are several legal principles involved here as well as many practical considerations. This Court and all who practice in front of it or on its periphery must constantly keep in mind that all fees and expenses are always subject to review and that as the Court in *In re Hotel Associates, Inc.*, 15 B.R. 487 (1981), so eloquently stated:

"In any application for counsel fees, the primary concern of the Court must be the benefit which the estate derived from the professional services".

Also the Missouri Bar has spoken to such issues, see Formal Opinion 19, reference to Canon 2–DR2–106. The Court is also mindful that Robb & Robb are, in effect, applying nunc pro tunc for allowances and fees inasmuch as their employment was never approved by the Court prior to services being rendered. As such, the Court is under no constraint to allow that firm any remuneration, since employment approval nunc pro tunc is strictly within the sole discretion of the Court. *In re Triangle Chemicals, Inc.*, 697 F.2d 1280. Likewise, the Court might choose to view Clause C in the new employment agreement as placing Shughart-Thomson in the same position of applying nunc pro tunc for employment and remuneration since they agreed that all prior contracts were null and void. Therefore, this Court could, in its discretion, disallow any expenses or remuneration if it so chose. See *In re Triangle Chemicals, Inc., id.* This would leave only Dennis J.C. Owens with a pre-approved (by Judge Pelofsky) employment, and that clearly envisioned review and approval by the Court.

Counsel for the debtors champion an even more interesting theory for disallowing any fees to Robb & Robb, contending that the inclusion of Clause A in the new agreement was a violation of the Canons of Professional Ethics in that it created a proprietary interest in the attorneys. See DR5–103, Missouri Bar, adopted November 6, 1970, effective January 1, 1971. Debtors' argument follows the line that since that Clause is a violation of the Canons of Professional Conduct, the Court should throw out the entire contract and allow nothing to any of the attorneys signing same. The Court is not willing to adopt such a broad interpretation and certainly believes there is no need to enter the field of ethical and canonical hair-splitting to reach a result in this matter. Were the Court to do otherwise, it would then have to venture into the quagmire of what weight to put on the

point that said Clause A was contained in a contract executed by debtors after the bankruptcy and apparently with the full knowledge of debtors' counsel.

Neither does this Court intend to engage in a review of the wisdom of pre-trial, and trial expenditures on a line by line basis. Granted that in the perfect vision of hindsight, the purchase of flowers for an expert witness who was hospitalized, the filming of a video tape (in the milk barn with one of the expert witnesses as the narrator) which was not allowed to be shown to the jury, may well reflect errors in judgment as to necessary expenses and pretrial preparation. However, when the expenditures were made, the rose colored lens of a huge verdict colored the vision of all the participants.

The Court will, therefore, reduce the requests for expenses and fees accordingly:

1. To Shughart, Thomson & Kilroy, the sum of $42,755.48 in expenses is allowed and ordered disbursed. No fees are allowed.

2. To Robb & Robb the sum of $31,163.01 in expenses are allowed and ordered disbursed. No fees are allowed.

3. To Dennis J.C. Owens the sum of $303.91 in expenses is allowed and ordered disbursed. The sum of $5,625.00 in fees is allowed and ordered disbursed. This figure represents the claimed 10% contingent contract figure on the Babson payment and nothing is allowed on the Bolivar payment which was not truly the subject of appellate proceedings since it appears that Bolivar was even more tired of the struggle than the other participants.

To further elucidate the mathematics of the Court, the debtors estate will end up with one-third of the principal judgment and Shughart, Thomson & Kilroy along with Robb & Robb with two-thirds of the principal judgment, plus all the costs paid by Babson & Bolivar, minus the allowance to Dennis J.C. Owens which is surcharged to Robb & Robb and to Shughart, Thomson & Kilroy. The Court recognizes that the two firms had a contractual right to rely on

Clause B of the new contract and did so. However, this created the need for the services of Mr. Owens and this Court is of the belief that when you contract to represent a client you contract to do so until the bitter end.

Obviously, this opinion will please none of the four participants. It is, therefore, designated as a final order for the purpose of appeal should any party choose to do so. It also constitutes the Findings of Fact and Conclusions of Law of the Court in conformity with Bankruptcy Rule 7052. The parties may jointly or severally present Orders of Disbursement for the sums set out to the Clerk of the Circuit Court of Vernon County, Missouri for execution. Counsel for the debtors may move for disbursement to the estate upon notice to the creditors.